**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-02985-DOC-ACCV Date: July 15, 2026

Title: Bryson Bumgardner v. Volvo Cars USA, LLC et al.

PRESENT: THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: None Present | ATTORNEYS PRESENT FOR DEFENDANT: None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER REMANDING CASE TO STATE COURT SUA SPONTE**

On the Court's own motion, the Court hereby **REMANDS** this case to the Superior Court of California, County of San Bernadino.

## I. Background

This is an employment action brought under California state law. In May 2021, Plaintiff Bryson Bumgardner ("Plaintiff") was hired as a Warehouse Associate for Defendants Volvo Cars USA, LLC and Does 1-10 ("Defendants"). Complaint ("Compl.") (Dkt. 1-2) ¶ 8. Plaintiff's duties included picking, packing, and moving automotive parts for shipment using forklifts, power jacks, and electric cars. *Id.*

Plaintiff alleges that beginning in 2024 he became the target of escalating hostility and threats by coworkers on the shipping floor. *Id.* ¶ 9. The threats alleged include repeated verbal and physical confrontations and aggressive behavior involving motorized carts and other verbal threats of violence. *Id.* Plaintiff alleges that these incidents included coworkers driving carts directly behind Plaintiff without warning "dangerously close to his legs," and escalated minor work disputes to "profane confrontations" which caused Plaintiff reasonable fear of physical injury. *Id.* Plaintiff alleges that he reported these incidents repeatedly to his shop steward, Leo Reyes and later directly to his manager, Mike Duterte. *Id.* ¶ 10. Plaintiff alleges that he identified the individuals

involved in the incidents and repeatedly requested that Defendants provide a safe work environment. *Id.* ¶10. Plaintiff alleges that Defendants failed to conduct meaningful corrective action. *Id.* Instead, Plaintiff was instructed to avoid the employees involved and participate in "superficial reconciliations," or otherwise continue to work without effective intervention. *Id.*

In November 2024, Plaintiff alleges that he was subject to restrictions not imposed on similarly situated employees. *Id.* ¶ 11. Plaintiff alleges that Management prohibited him from using his Bluetooth speaker or radio and instructed him not to speak with any coworkers while working despite radios and casual conversation being common throughout the warehouse. *Id.* Plaintiff explained that he had ADHD and music helped him focus and alleges that his manager did not discuss any accommodations and instead asked if Plaintiff was "comfortable taking medication." *Id.*

Additionally, Plaintiff took intermittent leave to care for his three young children, each with significant medical needs. *Id.* ¶ 12. Plaintiff alleges that he submitted leave requests through Defendants' leave administration process and openly informed management of his children's medical conditions. *Id.* Plaintiff further alleges that management repeatedly complained about and documented Plaintiff's absences and asserted that his leave "created strain on operations." *Id.* Beginning in 2024 and into 2025 Plaintiff alleges that Defendants repeatedly informed Plaintiff that his leave paperwork was missing or deficient without clearly identifying what additional documentation was required. *Id.*

In September 2025, after Plaintiff returned from a disability-related leave, Defendants allegedly renewed demands for additional documentation that Plaintiff believed was already addressed through Defendants' designated benefits administrator and his medical providers. *Id.* ¶ 13. Plaintiff alleges when he tried to clarify the issue, he was informed that HR had instructed management not to assist him. *Id.* Plaintiff was allegedly told not to contact Defendants' designated administrator during work hours which precluded Plaintiff from reasonably accessing "the benefits he was entitled to." *Id.*

Plaintiff further alleged that he was subject to repeated race-based remarks by his manager, Mike Duterte. *Id.* ¶ 14. Plaintiff alleges that these remarks included describing Plaintiff's music as "white boy" music, and the manager referred to Plaintiff as "Jackson," from the movie Bloodsport, referring to Plaintiff as one of the few white employees working in a predominately Hispanic work environment. *Id.*

On September 19, 2025, Plaintiff alleges that coworker, Nilo Reynoso, confronted Plaintiff and falsely accused him of vaping at the warehouse. *Id.* ¶ 15. After Plaintiff denied the accusations, he alleged that Nilo Reynoso threatened violence towards Plaintiff in front of management. *Id.* Plaintiff expressed frustration that repeated false accusations and hostile treatment continued without meaningful management intervention. *Id.* Plaintiff alleges that manager Mike Duterte responded by asking Plaintiff, "Are you going to be okay when we fire you?" before Plaintiff was then sent home. *Id.*

On October 2, 2025, Plaintiff used disinfectants around his work area because he was concerned about exposing his medically vulnerable children to illness. *Id.* ¶ 17. He alleges that the supervisor instructed Plaintiff to stop using the disinfectant and Plaintiff complied. *Id.* Later that day, he was informed that he was being suspended until further notice for alleged insubordination and was required to surrender his badge. *Id.*

On October 8, 2025, Defendant terminated Plaintiff's employment. *Id.* ¶ 18. Plaintiff alleges that Defendant did not interview Plaintiff regarding the basis for his termination, did not provide an opportunity for Plaintiff to respond to the allegations against him, nor did Defendant provide written termination findings or investigation results. *Id.* Plaintiff also alleges that Defendants' personnel file contained no documentation reflecting any investigative findings or decision-making to support the termination. *Id.*

Plaintiff further alleges that Defendant failed to pay timely and fully all wages owed to Plaintiff, including overtime, accrued vacation, and other compensation. *Id.*

Plaintiff now brings the following claims against Defendants: 1) Discrimination in violation of FEHA (Government Code §12940(a)); 2) Failure to Provide Reasonable Accommodation in Violation of FEHA (Government Code §12940(m)); 3) Failure to Engage in the Interactive Process in Good Faith in Violation of FEHA (Government Code §12940(n) and §12926.1(e)); 4) Retaliation for Engaging in Protected Activity in Violation of FEHA (Government Code §12940(h)); 5) Harassment in Violation of FEHA (Government Code §12940(j) and §12923); 6) Failure to Prevent Discrimination and Harassment in Violation of FEHA (Government Code §12940(k)); 7) Negligent Hiring, Supervision, and Retention; 8) Wrongful Termination in Violation of Public Policy; 9) Whistleblower Retaliation for Engaging in Protected Activity (Labor Code §1102.5); 10) Failure to Pay Overtime Wages Labor Code §§ 510, 1198; 11) Failure to Pay All Wages Due to Discharged or Quitting Employees (Labor Code §§ 201-203); 12) Failure to

Maintain Accurate Time Records (Labor Code §1174); 13) Failure to Mitigate and/or Retaliation for Reporting An Unsafe Workplace (Labor Code §§ 6310 et al.); 14) Unfair Competition in Violation of Business and Professions Code §17200, *et seq.*

Plaintiff originally filed suit in the Superior Court of California, County of San Bernardino, on April 9, 2026. Notice of Removal ("Not.") (Dkt. 1) at 2. On June 1, 2026, Defendant removed the action to this Court, asserting diversity jurisdiction. *Id*.

## II. Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441, which provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. This statute "is strictly construed *against* removal jurisdiction," and the party seeking removal "bears the burden of establishing federal jurisdiction." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988) (emphasis added) (citations omitted).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

Generally, a removing defendant must prove by a preponderance of the evidence that the amount in controversy satisfies the jurisdictional threshold. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2008). If the complaint affirmatively alleges an amount in controversy greater than $75,000, the jurisdictional requirement is "presumptively satisfied." *Id.* In that situation, a plaintiff who then tries to defeat removal must prove to a "legal certainty" that a recovery of more than $75,000 is impossible. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Crum v. Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). This framework applies equally to situations where the complaint leaves the amount in controversy unclear or ambiguous.

*See Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

A removing defendant "may not meet [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (quoting *Gaus*, 980 F.2d at 567). If the plaintiff has not clearly or unambiguously alleged $75,000 in its complaint or has affirmatively alleged an amount *less* than $75,000 in its complaint, the burden lies with the defendant to show by a preponderance of the evidence that the jurisdictional minimum is satisfied. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010); *Guglielmino*, 506 F.3d at 699.

While the defendant must "set forth the *underlying facts* supporting its assertion that the amount in controversy exceeds the statutory minimum," the standard is not so taxing so as to require the defendant to "research, state, and *prove* the plaintiff's claims for damages." *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (emphases added). In short, the defendant must show that it is "more likely than not" that the amount in controversy exceeds the statutory minimum. *Id*. Summary judgment-type evidence may be used to substantiate this showing. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). For example, defendants may make mathematical calculations using reasonable averages of hourly, monthly, and annual incomes of comparable employees when assessing the amount in controversy in a wrongful termination suit. *Coleman*, 730 F. Supp. 2d. at 1148–49.

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101–02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte*. *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

## III. Discussion

Defendants argues that this Court has diversity jurisdiction in this action. Not. at 1. The Court disagrees.

Defendants claim that Plaintiff seeks "general damages in an amount no less than $1,000,000." Not. at 1. However, nowhere in the Complaint does Plaintiff demand a specific amount, nor do Defendants provide any concrete facts showing that Plaintiff's alleged injuries result in damages over $75,000.

The Court only considers lost wages in the period from termination until removal. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious") (emphasis added). Here, Plaintiff was terminated October 8, 2025, Compl. ¶ 18, and the case was removed on June 1, 2026, *see generally* Not. At the time of Plaintiff's termination, he was paid $1,140.00 per week or $4,560.00 per month. Compl. ¶ 18. Accordingly, Plaintiff's past economic damages at the time of removal are $38,429.40. [1] This Amount in Controversy is below the $75,000 threshold. Even when the $500 penalty under Labor Code Section 1174.5 is added to the calculation, the total Amount in Controversy is $38,929.40, which does not exceed the $75,000 threshold.

While Plaintiff *might* have suffered injuries warranting an amount over $75,000, the record before the Court today does not support such figure. Furthermore, this Court does not include speculative damages, such as attorneys' fees or emotional distress damages, when calculating the amount in controversy. *See Traxler*, 596 F.3d at 1011; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Because Defendant has not satisfied their burden to show that more than $75,000 is at issue in this case, the Court lacks diversity jurisdiction.

The Court's decision here is reinforced by the fact that Congress has not raised the amount in controversy since 1996—nearly three decades ago.[2] *See* The Federal Courts Improvement Act of 1996, 110 Stat. 3850. Since then, the inflation rate is nearly 100% (*i.e.*, prices have almost doubled). Thus, adjusted for inflation, the amount in controversy should be around $150,000. Stated conversely, a case worth $75,000 in 1996 is worth only $37,500 in today's dollars. Because inflation has plainly decreased the "real" value of the amount in controversy, more and more cases are able to meet the jurisdictional

---

[1] $1,140.00 x 33.71 weeks = $38,429.40

[2] For reference, in 1996, the minimum wage was $4.75 per hour, and only 16% of Americans had cell phones. Indeed, the current amount-in-controversy is older than both of my law clerks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



threshold and can be brought in federal court. As federal diversity jurisdiction expands, state court jurisdiction to decide purely state law issues and develop state law correspondingly decreases. Thus, the federal jurisdictional creep is incompatible with the most basic principles of federalism.

Federalism is not the only loser in Congress's failure to increase the amount in controversy. When a case is improperly removed, as happened here, ultimate resolution is delayed. Moreover, if a court does not immediately remand a case sua sponte, a plaintiff may move to remand. Because cases subject to motion to remand are typically small dollar cases, this increased motion work can quickly cause attorneys' fees to outrun any potential recovery and places an immense burden on a plaintiff's lawyer working on contingency. In this respect, the current low jurisdictional threshold reduces access to justice. Therefore, the Court respectfully encourages Congress to reconsider the amount in controversy minimum.

## IV. Disposition

For the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of California, County of San Bernadino..

The Clerk shall serve this minute order on the parties.



Initials of Deputy Clerk: kdu